## No. 26989

## The People of the State of Colorado v. George R. Favors

(556 P.2d 72)

Decided November 15, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The defendant George Robert Favors, was convicted by the jury of first-degree murder[1] and third-degree assault.[2] On appeal, he claims that the murder statute is unconstitutional. He also asserts that the trial judge failed to properly instruct the jury as to the crime of negligent homicide or on the issue of self-defense. Finally, he claims that the trial judge committed reversible error when he denied the defense request to allow the jury to examine the site where the crime occurred. We affirm.

In March of 1974, the defendant was living in an upstairs apartment with his wife and two children. His wife's cousin, Vivian Sanders, lived in a downstairs apartment. The events which led to the shooting in issue centered around a dispute between the defendant and Vivian Sanders over money that she owed to the defendant. Prior to the shooting, she told the defendant that she was not going to pay the money back.

Vivian Sanders and Shiela Fair roomed together, and the two had boyfriends who offered to help in Vivian's confrontation with the defendant. The defendant had previously had a number of disputes with Ronnie Smith, who was Shiela Fair's boyfriend. Smith, who generally carried a .38 revolver, and the defendant had a heated verbal exchange which pointed to a possible fight. The defendant then returned to his apartment, got his 30-30 caliber rifle, and returned to the first-floor apartment. The two girls and three men were in the apartment watching television when the defendant, standing outside of the door, yelled for the parties to come out and then fired three so-called warning shots through the screen door into the room. Vivian Sanders was hit by one of the shots, and one of the men suffered a fatal wound. Then the police arrived, the defendant admitted that he fired the shots and surrendered his rifle.

It is undisputed that Ronnie Smith and T. L. Williams confronted the defendant when the fight was brewing. Evidence before the jury established the sequence of events, the facts and character evidence which the defendant offered to support his claim of self-defense, and a factual basis for the charges which the prosecution made against the defendant. Thereafter, the jury convicted the defendant on both charges, and concurrent sentences were imposed.

I.

## Constitutionality of the First-Degree Murder Statute

The defendant contends that the section of the first-degree murder statute[3] under which he was convicted is indistinguishable from the

---

[1] 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(d), now section 18-3-102(1)(d), C.R.S. 1973.
[2] 1971 Perm. Supp., C.R.S. 1963, 40-3-204, now section 18-3-204, C.R.S. 1973.
[3] 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(d), now section 18-3-103(1)(d), C.R.S. 1973.

manslaughter[4] or the criminally negligent homicide statutes.[5] We cannot accept this argument.

Equal protection of the laws requires that criminal statutes articulate standards which can be applied with reasonable certainty in distinguishing one class of proscribed conduct from another. Even if, as a matter of due process, the statute clearly defines the act which is prohibited, *see People v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974), the statute must still stand apart from enactments punishing similar forms of conduct. The root evil is unequal punishment for equal acts. As we said in *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975):

"A statute which prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations is violative of a person's right to equal protection of the laws."

In light of these principles, we have previously held that the first-degree murder statute is distinguishable from the manslaughter statute:

"As to the distinction between [first-degree murder] and manslaughter, it is obvious the two statutes impose different standards of care. The manslaughter statute requires that the cause of death be *recklessly* done. . . . In comparison, an extreme indifference to human life is clearly a more culpable standard of conduct, especially where necessarily coupled with the additional requirement that there be created a grave risk of death."

*People v. District Court, supra* (emphasis added).

In *Calvaresi, supra*, we held that the manslaughter statute was, for constitutional purposes, insufficiently distinguishable from the criminal negligence statute. The logic of these two decisions mandates that the first-degree murder statute must also be sufficiently distinguishable from the criminal negligence statute. The text of the statutes confirms this inference. To commit criminal negligence, an individual must fail to perceive a substantial and unjustifiable risk. The requisite risk, under the statute, must be such that failure to perceive the risk constitutes gross deviation from that standard of care that a reasonable person would exercise under the circumstances. *See* section 18-3-105(1)(a), C.R.S. 1973.

We cannot sit as legislative draftsmen. The degree of semantic distinction required in criminal statutes which impose different penalties must be determined both by the content of the language itself and its probable impact upon the jury. We are satisfied that the statutory language creates distinguishable standards which can be fairly applied by jurors.

---

[4] 1971 Perm. Supp., C.R.S. 1963, 40-3-104(1)(a), now section 18-3-104(1)(a), C.R.S. 1973.
[5] 1971 Perm. Supp., C.R.S. 1963, 40-3-105(1)(a), now section 18-3-105(1)(a), C.R.S. 1973.

## II.
## The Instructions

The defendant argues that the trial court failed to properly instruct the jury on an alternative theory of the case that is part of the negligent homicide statute. *See* section 18-3-105(1), C.R.S. 1973. This subsection of the statute imposes criminal liability where a person causes the death of another "[i]ntentionally in the good faith but unreasonable belief that one or more grounds for justification exist under sections 18-1-701 to 18-1-707."

■ The defects in the defendant's argument are two-fold. First, his tendered instruction failed to include the element of acting "intentionally" and was, therefore, not a correct statement of the law. *See Quintana v. People*, 178 Colo. 213, 496 P.2d 1009 (1972). Second, it ignores the fact that the jury rejected both lesser crimes as presented and convicted him of first-degree murder, rejecting second-degree murder, although given a proper instruction. Failure to instruct on an even less serious offense than second-degree murder, in light of the jury's verdict for the most serious possible offense, does not comport with an inference of prejudice and did not deny the defendant a fair trial. *See People v. Mullins*, 188 Colo. 23, 532 P.2d 733 (1975).

■ The defendant also seeks reversal on the basis of the trial court's failure to properly instruct the jury on the self-defense issue. The trial court did not explicitly define the principles that a person may rely on appearances and that "retreat to the wall" is unnecessary in the exercise of self-defense in this jurisdiction. *See People v. Tapia*, 183 Colo. 141, 515 P.2d 453 (1973); *People v. LaVoie*, 155 Colo. 551, 395 P.2d 1001 (1962); *Young v. People*, 47 Colo. 352, 107 P. 274 (1910).

The instruction issue in this case is analogous to that presented in *Steele v. People*, 39 Colo. 111, 88 P. 857 (1907), where we said:
"It may be conceded that the learned judge did not correctly state the law on the subject frequently referred to as the doctrine of 'retreat to the wall,' as established by the decisions of this court . . . but the defendant cannot complain, because the evidence does not disclose a case to which the law of self-defense . . . applies."

Our review of the record indicates no basis for application of the doctrine of self-defense. It is undisputed that the defendant went upstairs, remained several minutes, and then armed himself with a rifle and returned downstairs. He then came to the apartment door and, without any objective indicia of danger or threat to himself at the time, fired three shots into the apartment. By his own testimony, he could not see through the screen door and had no immediate indication that he was threatened with danger. While this jurisdiction allows reliance on appearances, and has not required that a person "retreat to the wall" as a condition precedent to self-defense, that doctrine cannot be distorted into a device which exonerates

an assailant. As in the *Steele* case the defendant has no basis to complain about the instructions which the jury received.

## III.
## Failure to Permit the Jury to View the Crime Scene

The trial court denied the defendant's request to allow the jury to view the scene of the crime. While the actual screen door was presented at trial, the defendant contends that his inability to allow the jury an opportunity to view the screen door in the actual location constituted reversible error.

■ It is commonly recognized that the trial court may permit the jury to view the actual scene of the crime. *See Swift v. People*, 171 Colo. 178, 465 P.2d 391 (1970); *Day v. People*, 152 Colo. 152, 381 P.2d 10 (1963), *cert. denied*, 375 U.S. 864, 84 S.Ct. 134, 11 L.Ed.2d 90 (1964); 3 *C. Torcia, Wharton's Criminal Evidence* § 634 (1973); 4 *Wigmore on Evidence* § 1164 (Chadbourne Rev. 1972); *Annot.*, 124 A.L.R. 841 (1940); *cf. Scott v. Tubbs*, 43 Colo. 221, 95 P. 540 (1908); *D.T. & F.W. R.R. Co. v. Pulaski Irrigation Ditch Co.*, 11 Colo.App. 41, 52 P. 224 (1898). It is also well-established that the decision as to whether a "view" by the jury will be permitted is within the sound discretion of the trial court. *See Swift v. People, supra; Day v. People, supra.*

■ The discretion of the trial court in ruling on such a request must be exercised in accordance with the same rules which guide the admission of other evidence. In this case, the question of whether the defendant could see through the screen was material to the defendant's theory of the case. The question, however, was answered when the actual screen door was admitted as evidence. Crim. P. 26; *see generally*, 4 *Wigmore on Evidence* § 1164 (Chadbourne Rev. 1972); *McCormick on Evidence* § 216 (2d ed. 1972).

The defendant contended that the view through the screen door was occluded and that he could not have anticipated injury to others as a result of his "warning" shots. In this case, the exterior and interior lighting conditions existing at the time of the incident were matters of disputed testimony and would have been difficult, if not impossible, to duplicate. The defendant presented eye-witness testimony as to the lack of visibility through the screen door at a time proximate to the shooting.

Under the circumstances of this case, the denial of the right to have the jury view the crime scene did not constitute an abuse of discretion.

The remaining assertions of error raised by the defendant are without merit.

Accordingly, we affirm.