The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Larry GORDON, Defendant–Appellant.

No. 85CA1047.

Colorado Court of Appeals,
Div. II.

Aug. 18, 1988.

Rehearing Denied Sept. 15, 1988.

Certiorari Denied Dec. 27, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Linda A. Perkins, Deputy State Public Defender, Denver, for defendant-appellant.

KELLY, Chief Judge.

The defendant, Larry Gordon, appeals from a judgment of conviction entered on jury verdicts finding him guilty of second-degree murder and a crime of violence. He contends that the trial court erred in refusing to instruct the jury on the lesser included offense of reckless manslaughter and in admitting testimony of his prior acts of violence toward the victim. We agree with the defendant's first contention and reverse.

Until August 4, 1984, the defendant lived with the victim and her two daughters. On that date, the victim took the children and moved out in response to the defendant's violent conduct toward her. She first sought refuge at the home of her cousin, to whom she revealed the defendant's repeated physical abuse and threats against her. She then went to stay with her aunt.

The victim and the defendant failed to resolve their differences by telephone the following morning. That afternoon, the defendant drove his van to the aunt's residence and parked across the street. The victim walked out to meet him, carrying his dirty laundry in a bag. She handed him the laundry through the open window, and the two conversed for a short while.

The defendant then got out of the van and began to beat her. The victim pulled out a gun and fired at him several times, but failed to hit him. As the victim ran toward the house, the defendant re-entered the van, started it, and chased her across the lawn. The van ultimately slammed into the house crushing the victim against it and killing her.

The defendant drove off in the van. He soon appeared at a nearby police station "agitated, excited and upset." While he was for the most part incoherent, the officers were able to glean that a woman had shot at him and that they should call an ambulance because, "I think I hit her."

The trial court instructed the jury on second-degree murder, heat of passion manslaughter, and criminally negligent homicide. It declined, however, to instruct on reckless manslaughter, as the defendant requested, observing that:

"[The reckless manslaughter] statute indicates, the individual has to be aware of a risk, yet consciously disregard a substantial and unjustifiable risk. In other words, that keynotes really an intentional act which is damn foolhardy, and I just think there is no evidence to raise that sort of theory in this case *in that there was [not] any perception or an opportunity for perception of a substantial and unjustifiable risk, and therefore, conscious disregard of that risk.*" (emphasis added)

I.

The defendant argues that there are inferences available from the evidence from which the jury could find, in accordance with §§ 18–3–104(1)(a) and 18–1–501(8), C.R.S. (1986 Repl.Vol. 8B), that the defendant caused the death of the victim through conscious disregard of a substantial and unjustifiable risk that the result would occur. We agree.

In a homicide case, if there is evidence, however slight, tending to establish a lesser included offense, the refusal to

instruct on the lesser offense is reversible error. *People v. Shaw*, 646 P.2d 375 (Colo. 1982). If the jury could harbor a reasonable doubt of the defendant's guilt of the greater offense but, at the same time, be convinced beyond a reasonable doubt of that defendant's guilt of the lesser included offense, then the defendant is entitled to have the jury instructed on the lesser included offense. *Bowers v. People*, 617 P.2d 560 (Colo.1980).

■ While it is true that the prosecution here presented sufficient evidence to support the jury's verdict of second-degree murder, there were, nevertheless, inferences available from the evidence from which the jury could have believed the defendant's conduct was reckless. Thus, the jury could have believed that the defendant intended only to frighten the victim by chasing her in his vehicle, and could then have concluded that his conduct was reckless in that he disregarded the substantial risk that he might actually hit her and cause her death. *See People v. Shaw, supra.* The jury should have been given the choice between second-degree murder and reckless manslaughter.

■ The People's argument that the failure to instruct is harmless error is inappropriate under these circumstances. The argument rests on the proposition that, because the jury rejected both of the lesser offenses on which it was instructed, it would undoubtedly have rejected the third also, had it been given that opportunity. This would be an apt analysis in a case in which the jury has convicted a defendant of an offense higher than an included offense on which there was an instruction, and there is a still lesser included offense on which there was no instruction. In such a case, the selection by the jury of the highest available grade of the offense constitutes a rejection of the next lower included offense and of all lesser offenses included within the latter. *See People v. Favors*, 192 Colo. 136, 556 P.2d 72 (1976); *People v. Mullins*, 188 Colo. 23, 532 P.2d 733 (1975).

In both *Favors, supra,* and *Mullins, supra,* for example, the defendants were convicted of first-degree murder and the juries were also instructed on second-degree murder. Thus, the juries' selection of first-degree murder constituted a rejection of second-degree murder, carrying an implicit rejection of all offenses included in second-degree murder. In *Favors*, therefore, it was not prejudicial error to fail to instruct on criminally negligent homicide:

"Failure to instruct *on an even less serious offense than second-degree murder, in light of the jury's verdict for the most serious possible offense,* does not comport with an inference of prejudice and did not deny the defendant a fair trial." (emphasis added)

Similarly, in *Mullins*, the failure to instruct on manslaughter was harmless error because the jury, when given a choice of first or second-degree murder, convicted of the former.

■ Here, however, the defendant was not charged with first-degree murder. He was charged with and convicted of second-degree murder. There is no lesser offense of second-degree murder which includes reckless manslaughter as an included offense within it. Heat of passion manslaughter and reckless manslaughter are of equal grade, and neither is included within the other. Hence, the jury's rejection of heat of passion manslaughter carries no implication whatever as to what it might have done with reckless manslaughter, given the chance.

■ Likewise, the rejection of criminally negligent homicide in this case has no import. Reckless manslaughter is not included in criminally negligent homicide; rather, criminally negligent homicide is the lesser of the two offenses. The heart of the *Favors* rule is in the jury's rejection of a lesser included offense in which is included the offense on which there was no instruction. Applied here, the rule becomes a sort of creative non sequitur. Accordingly, we hold that the trial court's failure to instruct on reckless manslaughter was reversible error. *People v. Shaw, supra.*

### II.

We disagree with the defendant's multiple arguments that the trial court erred in

admitting evidence of the defendant's prior acts of violence against the victim. He contends that the trial court erred in admitting the testimony of the victim's cousin and others regarding her out-of-court statements "and other evidence of prior acts of misconduct toward the victim by the defendant."

■ Evidence of prior threats and acts of violence by the defendant toward the victim is admissible in a murder prosecution to show the mental state of the victim and hostility or ill will between the victim and the defendant. *Bustamonte v. People*, 157 Colo. 146, 401 P.2d 597 (1965). The evidence is especially probative when self-defense is in issue. Further, remoteness in time of the threats or acts of violence goes to the weight, not the admissibility, of the evidence. *People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977); *People v. Lazare*, 189 Colo. 530, 542 P.2d 1290 (1975).

■ Unlike the situation in *People v. Madson*, 638 P.2d 18 (Colo.1981), a theory of self-defense was a strong "undercurrent" to the defendant's case, and the jury received a self-defense instruction. The evidence here raised the issue whether the victim first attacked the defendant. Thus, evidence that she feared the defendant was highly probative of her conduct in the fatal confrontation, namely whether she was the aggressor. Accordingly, the victim's state of mind was relevant and was properly established by her statement of fear and by "other evidence circumstantially probative of that condition." *See People v. Madson, supra.*

We are not persuaded by the defendant's argument that the trial court erred in admitting the contested evidence without first making an evaluation under *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959) and *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979). We note that counsel for defendant initially dissuaded the trial court from pursuing a *Stull/Honey* analysis of this evidence. *See People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973) (party may not complain where he has been the instrument for injecting error in a case). Moreover, a careful review of the record reveals that the trial court's admission of the contested evidence comports with the requirements of *Stull* and *Honey*, including the giving of a limiting instruction each time evidence of this nature was offered.

In view of the foregoing conclusions, it is unnecessary to consider defendant's final assignment of error.

The judgment is reversed and the cause is remanded for a new trial.

SMITH and VAN CISE, JJ., concur.