The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Bernard C. CASTRO, Sr., Defendant–
Appellant.

No. 98CA2416.

Colorado Court of Appeals,
Div. III.

May 25, 2000.

Rehearing Denied July 27, 2000.

Ken Salazar, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Susan L. Foreman, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, Bernard C. Castro, Sr., appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder. We reverse and remand.

On January 20, 1998, several people, including defendant and the victim, spent the evening drinking at the home of mutual friends. Throughout the evening, defendant and the victim argued and verbally threatened each other.

In the early morning hours of January 21, 1998, defendant shot the victim once in the head, killing him instantly. The accounts of what happened were not clear due to the intoxication of the witnesses and defendant. Two witnesses testified that defendant had left the party and then returned. They testified that nothing drew their attention until they heard the gunshot. Neither of the witnesses saw defendant fire the gun.

Defendant testified that he never left the party. He testified that at the end of the evening, while sitting on a barstool, he felt a hard blow to his face, which he described as sounding like a dynamite stick going off in his brain, and he remembered falling. He also remembered thinking that he was in trouble, and that he didn't want to die. He did not recall shooting the victim, but did remember seeing an orange flash from a gun barrel in front of his face. The next thing he remembered was trying to get into his car. Defendant testified that he believed that he had shot the victim, because they were the only two in the room at the time, but that he had done so in self-defense.

Defendant was charged with one count of first degree murder. He was acquitted of first degree murder, but convicted of second degree murder. This appeal followed.

## I.

Defendant first argues that the trial court erred in refusing to instruct the jury on the lesser offense of criminally negligent homicide. We agree.

Defendant requested an instruction on both the lesser offenses of second degree murder and criminally negligent homicide. The trial court gave the second degree murder instruction, but refused the criminally negligent homicide instruction on the basis that defendant's affirmative defense of self-defense to first and second degree murder would be incompatible with the charge of criminally negligent homicide, and the jury would be confused by such inconsistent instructions.

On appeal, the People concede, in their brief, that the trial court's reason for refusing the tendered instruction was arguably incorrect. However, the People claim that the instruction was properly rejected on the basis that there was insufficient evidence of defendant's mental state to support an instruction of criminally negligent homicide.

■ A person acts with criminal negligence when:

> [T]hrough a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists.

Section 18–1–105(3), C.R.S.1999. Therefore, criminally negligent homicide is an unintentional killing caused by the actor's failure to perceive a substantial and unjustifiable risk that a certain result will occur. *People v. Nhan Dao Van,* 681 P.2d 932 (Colo.1984).

■ The court is not obligated to charge the jury concerning an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged, and convicting him of the included offense. Section 18–1–408(6), C.R.S.1999. *See also Jones v. People,* 711 P.2d 1270 (Colo. 1986); *People v. Shaw,* 646 P.2d 375, 379 (Colo.1982) (refusal to instruct on a lesser included offense is reversible error if "there is some evidence, however slight, tending to establish the lesser included offense.").

■ "When a jury could entertain a reasonable doubt of a defendant's guilt of a greater offense, and simultaneously be convinced beyond a reasonable doubt of the defendant's guilt of a lesser included offense, the defendant is entitled to have the jury instructed on the lesser included offense." *People v. Nhan Dao Van, supra,* 681 P.2d at 934–35.

■ Here, there was evidence supporting a conviction of criminally negligent homicide. There was evidence presented that both defendant and the victim were intoxicated at the time of the altercation, and that they had argued and threatened each other several times over the course of the evening. Defendant, who was 52 years old at the time of the incident, testified that the last thing he could remember was that he felt a hard hit to his face that sounded like a dynamite stick going off in his brain. The victim, age 22, had an abrasion on a finger of his hand; an injury that the autopsy indicated was consistent with a punch. In addition, the medical officer on duty at the jail observed swelling in the area of the defendant's left jaw. Defendant then remembered falling, but didn't remember shooting the gun; he only remembered seeing the flash from the gun barrel.

There is evidence that could support a jury finding that the defendant voluntarily fired his gun while failing to perceive that death would result. More specifically, this evidence could provide a rational basis for a criminally negligent homicide verdict based on a conclusion that defendant's unintentional killing of the victim was a gross deviation from the standard of care that a reasonable person would exercise, and caused defendant's failure to perceive a substantial and unjustifiable risk that the result of death would occur. *See People v. Mares,* 705 P.2d 1013, 1015 (Colo.App.1985)(stating that a jury could have concluded defendant had "committed a gross failure to perceive that his actions caused a substantial and unjustified risk that death could occur" when the victim was stabbed three times in the torso during a drunken brawl).

Moreover, the evidence that defendant voluntarily fired his gun while failing to perceive that death would result, provides a rational basis for the acquittal of the first degree murder charge.

At oral argument, the People argued, contrary to their position in their brief, that the trial court correctly refused to give the criminally negligent homicide instruction because defendant's affirmative defense of self-defense was incompatible with that charge. The People referred this court to the case of *People v. Garcia,* 826 P.2d 1259 (Colo.1992), which we conclude is inapplicable.

In *People v. Garcia,* the supreme court determined that the trial court correctly ruled the defendant, who was convicted of second-degree murder, was not entitled to a lesser non-included heat of passion manslaughter instruction. The defendant had first told the police that an intruder had stabbed his girlfriend. Later, in a subsequent statement, he confessed that he inadvertently stabbed her while trying to kill himself. At trial, the theory of defense was that an intruder had stabbed the defendant's girlfriend, and that his second statement to the police was untrue. *People v. Garcia, supra.*

The court found that the only evidentiary support for a heat of passion manslaughter instruction was the defendant's second statement to police, which the defendant had testified was a fabrication. The court found that the defendant's testimony was a binding judicial admission and, therefore, he could not "rely on a statement that he has, under oath, declared to be false." *People v. Garcia, supra,* 826 P.2d at 1263. Because there was no evidence apart from the disavowed statement to support a heat of passion manslaughter instruction, the trial court did not err in

refusing to give the proffered instruction. *People v. Garcia, supra.*

The record here indicates that there was evidence from which a jury could conclude that defendant was guilty of criminally negligent homicide. There was also evidence from which a jury could conclude that the killing was intentional, but that the defendant acted in self-defense. Accordingly, both self-defense and criminally negligent homicide instructions should have been tendered to the jury. However, the self-defense instruction should have only been applicable as a defense to the murder charge. *Cf. Case v. People,* 774 P.2d 866 (Colo.1989); *People v. Fink,* 194 Colo. 516, 574 P.2d 81 (1978)(ruling that the trial court acted properly in instructing the jury on second-degree murder, on the lesser included offenses of criminally negligent homicide and reckless manslaughter, and on self-defense as to the intentional charges only).

Therefore, we conclude that the trial court committed reversible error by refusing to instruct the jury on the lesser included offense of criminally negligent homicide. See § 18–1–408(6). We reverse defendant's conviction and remand for a new trial.

## II.

◼ Defendant also contends that the trial court erred in refusing to instruct the jury that the victim's fists could be considered deadly weapons, and in refusing to allow witness testimony regarding the victim's boxing lessons.

Although we would not have necessarily reversed on this issue, we note that if a proper foundation is laid on retrial, the jury should be instructed on the issue of whether the victim's fists could be considered a deadly weapon in the context of self-defense. *See* §§ 18–1–704(2), 18–3–203(1)(b), 18–1–901(1)(e), C.R.S.1999; *People v. Ross,* 831 P.2d 1310, 1313 (Colo.1992)(finding that "fists may be deadly weapons if in the manner they are used or intended to be used they are capable of producing death or serious bodily injury"). Moreover, witness testimony regarding the victim's boxing lessons may be admissible in relation to the issue of whether his fists could have been a deadly weapon.

## III.

◼ Finally, we address defendant's contention that the court erred in denying his motion for disqualification of the judge presiding over his preliminary hearing. We conclude that the issue is now moot.

On the morning of defendant's preliminary hearing, the judge assigned to his case was unavailable because of an unexpected scheduling conflict. As a result, just prior to the hearing, the case was reassigned to a different preliminary hearing judge.

Defendant orally moved to recuse the reassigned judge on the basis that the judge had previously represented him when she was a public defender, and was presiding over his dissolution of marriage proceeding. The reassigned judge denied defendant's motion, proceeded with the preliminary hearing, and found probable cause for first degree murder.

The Double Jeopardy Clause mandates that defendant can, on remand, only be tried for second degree murder. *See Deutschendorf v. People,* 920 P.2d 53 (Colo.1996)(an individual is protected from a separate prosecution for the same offense after acquittal).

Here, any error in the preliminary hearing is rendered moot because defendant was found guilty of second degree murder beyond a reasonable doubt. Although we are reversing defendant's conviction for second degree murder, the guilty verdict still provides evidence to support probable cause because our reversal is based on the failure to give a lesser included instruction, not on the quantity or quality of the evidence supporting the vacated conviction. *See People v. Horrocks,* 190 Colo. 501, 549 P.2d 400 (1976); *People v. Martin,* 670 P.2d 22, 24 (Colo.App.1983) ("once the defendant has been found guilty beyond a reasonable doubt, the issue of whether there was probable cause to bind him over after a preliminary hearing becomes moot").

## IV.

Because defendant's other allegations on appeal are unlikely to occur on retrial, we do not address them.

Defendant's judgment of conviction is reversed, and the cause is remanded for a new trial.

Judge JONES and Judge TAUBMAN concur.