The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Robin K. AULD, Defendant–Appellee.

No. 89CA0995.

Colorado Court of Appeals, Div. III.

Jan. 17, 1991.

As Modified on Denial of Rehearing Feb. 14, 1991.

Certiorari Denied Aug. 26, 1991.

Keith Cross, Sp. Prosecutor, Glenwood Springs, for plaintiff-appellant.

Haddon, Morgan & Foreman, P.C., Harold A. Haddon, Rachel A. Bellis, Denver, for defendant-appellee.

Opinion by Judge NEY.

The People appeal the judgment of the district court dismissing a criminal information charging defendant, Robin K. Auld, with one count of theft by receiving and

one count of possession of a dangerous weapon. We affirm.

In 1988, La Plata County law enforcement officials obtained a federal funding grant for the conduct of undercover activities aimed at drug trafficking, a project known by the acronym LEADS. The steering committee for LEADS included the sheriff of La Plata county, the district attorney for the Sixth Judicial District, and police chiefs of various police departments within the judicial district. Based on unsubstantiated information, the LEADS Committee initiated an undercover operation targeting the defendant, who was an attorney.

A fictitious complaint was filed against a "Colton Young" in the county court. "Colton Young" was in fact the alias of an undercover agent. The fictitious complaint was drafted by the district attorney, typed by his secretary, signed by a sheriff's officer, and notarized by the wife of the district attorney.

"Colton Young" was "charged" with carrying a concealed weapon and possessing marijuana. He was brought before a county judge, advised of his rights, and questioned by the court about general information relating to his identity, status, and bond. The undercover agent made several false statements to the judge, who was unaware of his true identity, and posted a surety bond, which was sworn to under oath in front of a deputy clerk for the county court. "Colton Young" then retained the defendant to represent him in his defense. The defendant telephoned the court to determine the status of the charges against "Colton Young."

After having paid the defendant his retainer in cash, the undercover agent asked if the remainder could be paid by giving something in trade. The defendant immediately replied that if cocaine was being suggested, he would not accept it; however, he stated that he might be interested in a gun at "a black market price."

Under the terms of the LEADS grant, the scope of its activities was limited to drug enforcement activities; therefore, the program could no longer be used to justify further action after the defendant rejected the opportunity to take drugs in exchange for legal services. Nevertheless, the LEADS committee, through the undercover agent, presented the defendant with weapons, first as collateral for his fee, and eventually in payment of his fee. His acceptance of an Uzi semiautomatic rifle led to the charges against the defendant.

After the defendant's arrest, the district attorney and law enforcement officers discussed with him the possibility that the charges would "go away" if he provided information about a number of people, including present or former clients. The defendant refused.

In response to a pretrial motion by defendant, the charge was dismissed, and this appeal was pursued by current counsel for the People.

## I.

■ The People assert that the trial court's dismissal of the case against the defendant violates the doctrine of separation of powers. We disagree.

The United States Supreme Court has recognized the existence of the legal defense of outrageous governmental conduct and has found application of a court's supervisory powers in dismissing a criminal case may be proper if the government's conduct has violated fundamental fairness and is shocking to the universal sense of justice. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Colorado recognized the due process claim of outrageous governmental conduct in *Bailey v. People*, 630 P.2d 1062 (Colo.1981).

*In People in Interest of M.N.*, 761 P.2d 1124 (Colo.1988), this concept was again at issue. There, the court accepted its viability, but it determined that an undercover agent's encouragement of a minor to purchase drugs and commit crimes, as well as providing a minor with illegal drugs, was not so extreme and outrageous as to amount to a denial of due process. Accordingly, the trial court's dismissal of delinquency proceedings against the minor was reversed by the supreme court.

Relying on *People in Interest of M.N.*, *supra*, the trial court here *denied* defendant's motions to dismiss that were grounded on governmental misconduct and outrageous governmental conduct which denied him due process, on targeting him without probable cause or reasonable suspicion, on failure to cease the operation when he refused drugs, and on infringement of the attorney-client relationship. However, the court granted defendant's motion to dismiss based on alleged outrageous governmental conduct that had implicated the court in law enforcement activities.

The People in effect admit that the district attorney here has perpetrated a fraud upon a court of this state by filing false documents, making false statements to a judge, and creating a counterfeit prosecution. They further concede that as a result of the district attorney's activities, the county court was duped into playing an active part in the prosecutorial function of the executive branch. It was therefore the executive branch which initially violated the doctrine of the separation of powers.

As the trial court correctly observed:

"How far can the Executive Branch involve the Judicial Branch, whether knowingly or unknowingly, as an accomplice to its undercover operations.... If there is any separation of powers and any independence of the branches of the government, then it cannot be that a law enforcement officer or a district attorney decides when and to what extent the judiciary becomes involved, knowingly or unknowingly, in its undercover operations. This is particularly so when the courts are supposed to be the one arena of impartiality favoring neither the prosecution nor the defense."

We agree with this analysis and reject any invocation of the separation of powers doctrine as a basis for reversal of the trial court's ruling.

## II.

■ The People next assert the trial court's dismissal must be reversed because the government's conduct did not prejudice the defendant. We disagree.

The People suggest that there is no Colorado case and very few cases in other jurisdictions which support dismissal for government misconduct absent a finding of actual prejudice to the defendant. This argument incorrectly assumes that the court's dismissal was based upon the improper conduct of targeting the defendant in an investigation without reasonable suspicion or attempting to use an attorney as an informant against his clients. However, as noted above, these acts of governmental misconduct were not the basis of the dismissal.

Therefore, we are unpersuaded by the People's argument that, since no actual prejudice to the defendant by the governmental misconduct was demonstrated, the dismissal for outrageous governmental conduct cannot stand.

## III.

■ The People further contend that the trial court erred in dismissing the charges against the defendant based upon the outrageous governmental conduct that implicated the court in the prosecution aspect of the law enforcement process. We again disagree.

Relying on the reasoning of *United States v. Omni International Corp.*, 634 F.Supp. 1414 (D.Md.1986), the trial court exercised its supervisory power in protecting judicial integrity in the face of governmental misconduct. The trial court found, with evidentiary support, that the conduct of the district attorney, an officer of the court, and the law enforcement agencies may have violated the Colorado Criminal Code relating to perjury and false swearing.

In addition, the district attorney may very well have violated the Code of Professional Responsibility by using perjured testimony, making false statements to the court, and by the manner in which he performed the duties of a public prosecutor. Also to be considered is ABA, *Standards for Criminal Justice*, Standard 3–2.8(a) (1980) which denotes as unprofessional conduct the intentional misrepresentation by a prosecutor of matters of fact or law to the court.

The foregoing list of potential violations, which is not intended to be exhaustive, committed by the district attorney and law enforcement agencies for the purpose of duping a court into becoming an accomplice in their law enforcement function must be condemned by this court.

Relying on *United States v. Murphy*, 768 F.2d 1518 (7th Cir.1985), the People assert that even though some rules have been broken, dismissal is not warranted even if the courts have been compromised.

The People's reliance on *Murphy* is misplaced. *Murphy*, which arose out of a federal investigation of corruption in the Chicago judicial system, is readily distinguishable.

An undercover investigation of an allegedly corrupt court system necessarily implicates the court system, and the Chicago investigation was conducted under the supervision of the presiding judge. Here, there was neither a corrupt court to be investigated, nor judicial supervision of the investigative activities.

We conclude that the trial court correctly determined that the conduct of the executive branch, in compromising the judicial branch, thereby making it an unknowing accomplice to undercover prosecution activities, was so outrageous that appropriate sanctions are required.

### IV.

The People finally assert that even if sanctions are appropriate, dismissal is too severe a sanction. In response to an invitation to suggest an appropriate sanction, the People have proposed that the political process may provide the only appropriate remedy. We are unpersuaded that the sole remedy lies in the electoral process. We conclude that when the integrity of the court is compromised, as here, by overzealous prosecution, dismissal of the case is an appropriate remedy.

The judgment is affirmed.

METZGER and RULAND, JJ., concur.