UNITED STATES of America, Plaintiff,

v.

**David J. SHIELDS, Defendant.**

**No. 90 CR 1044–1.**

United States District Court,
N.D. Illinois, E.D.

July 30, 1991.

See also 767 F.Supp. 163.

MEMORANDUM OPINION
AND ORDER

ILANA DIAMOND ROVNER, District
Judge.

## I. INTRODUCTION

The defendants in this case, a former state court judge and an attorney, are charged with having engaged in bribery in the context of a fictional lawsuit which the federal government had filed in an effort to ferret out alleged corruption within the Illinois courts. Defendant David J. Shields has filed two motions regarding the notice which the government provided to a representative of the Illinois court system that fictional cases would be filed within the Circuit Court of Cook County as a part of its undercover investigation. The first is a request that the government be required to disclose the terms and circumstances of the notice it provided. The second is a motion to dismiss the superseding indictment for the purportedly improper use of an undercover project. Shields brings this motion on the ground that the notice provided failed to comport with Shields' due process rights. For the reasons set forth below, the Court denies both motions.

## II. FACTS

The government alleges in this criminal prosecution that defendant Shields, formerly the Chief Judge of the Chancery Division of the Circuit Court of Cook County, Illinois, accepted bribes from his co-defendant, Pasquale F. DeLeo, an attorney, in exchange for favorable treatment in a case pending before Shields. The case in question, *Nichols v. Wilson,* No. 88 CH 6337, was a mock lawsuit which the government prepared and filed as part of an undercover investigation of purported corruption within the Illinois court system. As the result of a system of random assignment, the case was assigned to the docket of Shields, and events which allegedly transpired in the staged litigation of that suit form the basis for the indictment of Shields and DeLeo.

In the course of pretrial discovery, Shields requested that the government disclose the terms and circumstances under which the Illinois courts were notified that the government was conducting its investigation. The government represented to Shields that such notice had been given, but declined to identify any particulars.

Shields has filed two motions regarding this issue which now require a decision from the Court. Initially, Shields requested an order from the Court directing the government to disclose the manner in which it had provided notice to the Illinois courts of its investigation. Shields contended that this information was required in order for him to be able to ascertain whether the government's conduct comported with due process. In response, the government represented that it did provide notice to the Illinois courts, but contended that it should not be made to detail the particulars of the notice given. Before rendering a decision on this motion, the Court directed the government to submit *in cam-*

*era* and *ex parte* affidavits detailing the notice which it provided to Illinois authorities.

This request prompted a second motion from Shields regarding the notice issue. Shields had evidently been able to obtain from an independent source certain evidence regarding the notice which the government had provided to the state court system, and when the Court asked the government to submit its affidavits outlining the notice it had provided, Shields requested leave to file *in camera* and *ex parte* his own affidavit on this matter. The Court granted that request. Shields' affidavit was later submitted to the Court in support of a motion to dismiss the superseding indictment on the ground that the notice provided was inadequate. Plainly, this second motion largely moots the first, for it is apparent that Shields no longer requires discovery in order to determine whether there is a basis for challenging the sufficiency of the notice. Nonetheless, the Court finds it necessary to address the request for discovery as well as the motion to dismiss, particularly in view of the fact that the motion to dismiss includes requests for more expansive discovery on related questions and for an evidentiary hearing on the question of notice. (Shields Mem. at 7 n. 5, 9–10.)

### III.   ANALYSIS

■ This is not the first federal investigation of the Illinois circuit courts to employ fabricated cases. Such cases were used by the FBI extensively in the landmark Operation Greylord investigation, and in *United States v. Murphy*, the Seventh Circuit endorsed that investigation in commentary which largely disposes of Shields' motions:

> The FBI and the prosecutors behaved honorably in establishing and running Operation Greylord. They assure us that they notified the Presiding Judge of the Circuit Court's Criminal Division, the State's Attorney of Cook County, the Attorney General of Illinois, and the Governor of Illinois. Such notice may not be necessary, and certainly a criminal defendant is in no position to complain of the absence of such notice (for he has no personal right to protect the dignity of the Cook County courts), but the notice dispels any argument that the federal Government has offended some principle requiring respect of the internal operations of the state courts. The Greylord cases did not interfere with the smooth operation of the local courts or diminish the rights of any third party. They were, in this respect, less offensive than "sting" operations in which the police go into business as a "fence" for stolen goods. The existence of a well-paying fence may induce people to steal goods to sell to the fence. Here no stranger was at risk. Operation Greylord harmed only the corrupt.

768 F.2d 1518, 1529 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). *See also United States v. Martino*, 825 F.2d 754, 761–62 (3d Cir.1987).

As the government contends, *Murphy* makes clear that Shields has no standing to challenge the circumstances under which notice was given to the Illinois courts of the investigation which produced this prosecution. Thus, to the extent Shields suggests that deficiencies in the notice provided to the Illinois courts might impair the constitutional propriety of the investigation, an argument which *Murphy* leaves in doubt ("[s]uch notice may not be necessary"), this is not a challenge, according to *Murphy*, for Shields to make. Indeed, although Shields contends that he has a personal stake in the notice issue (Shields Mem. at 9–10), he has failed to articulate any way in which his own rights are implicated by the provision and form of notice. If anything, his challenge is a far broader one which rests upon the premise that the government's use of fictional lawsuits offends the ethical principles which guide attorney conduct. Although, as set forth below, the Court finds no merit to this contention, it suffices at the outset to reiterate that *Murphy* leaves no room for a defendant charged as the result of a federal undercover investigation of the state judiciary to raise the adequacy of the fore-

warning of that investigation provided to state officials. Accordingly, Shields has no entitlement to disclosure of the terms and circumstances under which the government provided notice of its investigation, to an evidentiary hearing on the matter, or to dismissal of the indictment on the grounds that the notice provided was inadequate.

■ Having concluded that Shields lacks standing to raise the question of notice, the Court need not, and does not, undertake to decide whether the federal government was required to notify Illinois court officials of its plans to mount an undercover investigation within the state court system. *Murphy* stops short of embracing such a requirement, and certainly the court's opinion did not envision the mini-trials that such a requirement would trigger. In any event, as discussed in further detail below, the government has represented that notice was given and has supported that representation with affidavits from individuals who have personal knowledge of the notice provided. This more than suffices to meet whatever requirement of notice that Shields can find in *Murphy*. However, Shields' motions rest not solely upon *Murphy* but also upon *In re Friedman*, 76 Ill.2d 392, 30 Ill.Dec. 288, 392 N.E.2d 1333 (1979). Because the Court concludes that *Friedman* does not impose a requirement of notice upon the government, some further discussion of that case is appropriate.

In *Friedman*, the Illinois supreme court considered whether an assistant state's attorney had exceeded the bounds of ethical propriety when, for the purpose of exposing defense attorneys engaged in bribery, he procured the absence of state witnesses, directed a police officer to give perjured testimony, and permitted the dismissal of

charges by judges who were not informed of his strategy until after the cases were dismissed. The issue sharply divided the court. A two-justice plurality concluded that the respondent's conduct had violated ethical rules which proscribe attorneys from knowingly presenting perjured testimony, participating in the creation of false evidence, or causing a witness to secrete himself from a court proceeding. 30 Ill. Dec. at 290–91, 392 N.E.2d at 1335–1336. However, the plurality relieved the respondent of any disciplinary penalty given his evident good faith and the lack of guiding precedent. *Id.* at 291, 392 N.E.2d at 1336. Two other justices concurred specially, finding that the respondent's conduct was ethical and thus agreeing that no discipline should be imposed. *Id.* at 294, 392 N.E.2d at 1339. The two remaining justices who participated in the case dissented, agreeing with the plurality's view that respondent had violated his ethical obligations. *Id.* at 294–297, 392 N.E.2d at 1339–1342 (Clark, J., dissenting); *id.* at 297–298, 392 N.E.2d at 1342–1343 (Moran, J., dissenting). Shields argues that a mandate of judicial awareness of an undercover investigation may be inferred from *Friedman* given the emphasis which plurality and dissent placed upon the sanctity of the courtroom [1] and the emphasis which the concurrence placed upon the fact that the prosecutor had given the courts involved prompt after-the-fact notice [2].

Given the particular facts which were before the court in *Friedman*, this Court does not read the decision to require notice in the context of an undercover investigation like the one which culminated in the indictment of Shields and DeLeo. Several important facts distinguish the two situations. *Friedman* presented the unseemly

---

1. *See* 30 Ill.Dec. at 290, 392 N.E.2d at 1335 ("[t]he integrity of the courtroom is so vital to the health of our legal system that no violation of that integrity, no matter what its motivation, can be condoned or ignored") (plurality); *id.* at 295, 392 N.E.2d at 1340 ("[l]awyers who cause or permit lies to be told to judges are guilty of conduct which tends to defeat the administration of justice, regardless of the motive of the lawyer and regardless of the immediate impact of the lie") (Clark, J., dissenting); *id.* at 296, 392 N.E.2d at 1341 ("it was the court's prerogative to

know of this little courtroom drama in advance and to pass upon its propriety") (Clark, J., dissenting); *id.* at 298, 392 N.E.2d at 1343 ("[t]he court must remain the ultimate forum of the truth") (Moran, J., dissenting).

2. *See* 30 Ill.Dec. at 294, 392 N.E.2d at 1339 ("The fact is that no one, other than the dishonest lawyers, was injured by respondent's conduct. The courts were promptly informed.") (concurrence).

circumstance of a prosecutor manipulating genuine witnesses (shooing some from the courtroom, instructing another to lie on the stand) in live criminal prosecutions where real injuries and rights were at stake, before unwitting courts. *See* 30 Ill.Dec. at 296, 392 N.E.2d at 1341 (Clark, J., dissenting) (noting that the defendants' rights were at stake). Moreover, because the particular judges involved were not suspected of any wrongdoing, the state had the option of immediately informing the court when it learned that a bribe had been attempted. *See id.* at 297, 392 N.E.2d at 1342 (noting that respondent could have given the trial court advance notice of his plan to catch the corrupt attorney in the act, thereby enabling the court to take measures to protect the defendant's rights). Here, in contrast, judges themselves were suspected of wrongdoing.[3] This scenario imposed obvious limits on the extent to which the government could make the courts aware of its investigation. Moreover, rather than toying with the interests of genuine witnesses and litigants, the government used fictional lawsuits as the vehicle for its investigation. Consequently, although the government engaged in deception, it did so in a way which did not implicate the rights of third parties or threaten a miscarriage of justice. Shields suggests that the use of such suits is *per se* improper. *See, e.g.,* Shields Mem. at 3 ("It is questionable whether a government agent can ever, consistent with Illinois law, suborn perjury or obstruct justice in the course of conducting an undercover investigation involving the courts."). But that argument is simply untenable. Although it may be true that the Seventh Circuit's Greylord decisions never explicitly addressed *Friedman, Murphy* leaves little room for doubt that the court of appeals would find *Friedman* no bar to the use of mock cases as a means to ferret out judicial corruption. Thus, although the court agreed that "the phantom cases had no decent place in court," it went on to remark:

In the pursuit of crime the Government is not confined to behavior suitable to the drawing room. It may use decoys, and provide the essential tools of the offense. The creation of opportunities for crime is nasty but necessary business. The Government offered Murphy opportunities to sell the powers of his office and disgrace himself. He accepted with alacrity.

*Murphy,* 768 F.2d at 1529 (citations omitted). Moreover, as set forth above, the court also took note that the Greylord cases did not disrupt the operation of the Cook County courts, did not impair the rights of third parties, and did not place any stranger at risk. *Id. Murphy* thus disposes of any analogy to *Friedman* here.

The Court does not mean to belittle the concerns which Shields has raised. Law enforcement by means of a ruse is, as the court observed in *Murphy,* a "nasty business"; and when the federal government plants mock lawsuits in the state court system it tugs at the concerns which inform the concepts of federalism and the separation of powers. However, as *Murphy* also reveals, artifices like the *Nichols v. Wilson* suit are a necessary and acceptable means of investigating suspected wrongdoing; and Shields finds no support in the case law for the proposition that when a state judge is a target of the investigation, state court authorities must know and/or approve of the investigation in advance.

■ All this having been said, the Court further determines that to the extent there may be some limited duty to provide notice to the appropriate state court authorities, the government satisfied that obligation here. The government has represented that notice was in fact given to the Illinois courts; under *Murphy,* that representation alone arguably suffices to allay whatever concerns there might be regarding federal intrusion into the inner workings of the state court system. *See United States v. Marcy,* No. 90 CR 1045–1,2 (N.D.Ill. May 10, 1991) (Aspen, J.) (denying comparable

---

**3.** *See People v. Auld,* 815 P.2d 956 at 959 (Colo. App.1991) (distinguishing cases like *Murphy* where allegedly corrupt courts were being investigated).

discovery motion regarding terms and circumstances of notification of Illinois courts of undercover investigation based upon government's representation that notice had been given). However, as set forth above, the Court, in an abundance of caution, directed the government to submit *in camera* and *ex parte* affidavits detailing the notice which it provided to Illinois authorities. The government has submitted the affidavits of three individuals on this subject. Shields has submitted *in camera* and *ex parte* the affidavit of a fourth individual as well.[4]

The Court has carefully reviewed these affidavits, and concluded that upon close reading they suffice to establish that the United States Attorney gave notice to the appropriate supervisory official of the Circuit Court of Cook County that the government would be filing manufactured cases somewhere within the Illinois court system as part of an undercover investigation. The affidavit which Shields has submitted is narrowly crafted. To the extent it may be read to depart from the government's affidavits, it does so only insofar as it suggests that the United States Attorney did not specify that his office would be filing its phantom cases within the *Chancery Division* of the Cook County Circuit Court. Yet, the government's affidavits do not represent that the United States Attorney specified any particular division when he gave notice to the representative of the Circuit Court. Accordingly, the Court finds that the affidavits do not conflict; and to the extent that they may be read to be inconsistent in any other respect, the Court deems the conflict immaterial, and thus does not undertake to resolve it.

Notice more particular than the United States Attorney evidently provided in this case was not required. Shields suggests that general notification was insufficient, and that the government was obligated to identify the exact case and courtroom which were to be the subjection of its investigation, or at least the division of the court system in which fictional cases were to be filed. (Shields Mem. at 8–9.) This argument must be rejected. The random case-assignment system employed by the state court precluded the government from knowing in advance which judge it would draw. Moreover, to insist that the government follow up at a later date and provide further details as to its investigation poses obvious security risks to the investigation. Shields cites no authority which lends support to such onerous reporting requirements; more importantly, he cites no concrete way in which his own rights would have been protected through more specific notice.[5] This simply reinforces Shields' lack of standing to raise a challenge to the indictment based upon any purported deficiencies in the notice.

Under all of these circumstances, there is no need to proceed any further with Shields' motions. The Court is satisfied that whatever limited duty of notice *Murphy* or the rules of professional responsibility may have imposed upon the government was fulfilled. Shields is entitled to neither discovery from the government on this question nor an evidentiary hearing.

## IV. CONCLUSION

For the reasons set forth above, Shields' motion for an order requiring the government to disclose the terms and circumstances under which it provided notice to the Illinois courts of the undercover investigation culminating in this prosecution is denied, as is his motion for dismissal of the indictment for improper use of an undercover project.

---

4. All four affidavits will be filed under seal and made part of the record.

5. Shields does not suggest that the government was required to provide notice to the presiding judge of the division in which its fabricated cases would be filed. Within the Chancery Division, that person would have been Shields himself.