24CA0803 Peo v Crawford 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0803
Fremont County District Court No. 23CR203
Honorable Thomas B. Flesher, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Brook N. Crawford,

Defendant-Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE JOHNSON
Fox and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Jeffrey D. Lindsey, District Attorney, Wendy S. Owens, Deputy District Attorney, Cañon City, Colorado, for Plaintiff-Appellant

Joseph Chase, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellee

¶ 1     An authorized representative of the District Attorney's Office for the Eleventh Judicial District (the prosecution) appeals the district court's order dismissing the criminal charges brought against defendant, Brook N. Crawford (Crawford).  The district court determined that certain public statements about Crawford made by the then-elected Eleventh Judicial District Attorney, Linda Stanley (Stanley), constituted outrageous government conduct.  We reverse the order of dismissal and remand the case to the district court for reinstatement of the criminal complaint.

## I.     Background

¶ 2     Solely for purposes of resolving this appeal and acknowledging that Crawford likely disputes some or all of the allegations, we base the following factual summary on the allegations in the complaint and the affidavit supporting Crawford's arrest, as well as the district court's written findings following Crawford's preliminary hearing.

¶ 3     Crawford and William Jacobs (Jacobs) began dating in March 2023.  Crawford had a son (the child) before meeting Jacobs.  While they were dating, Jacobs would sometimes watch the child, who was ten months old, when Crawford was at work.

1

¶ 4 On the morning of May 21, 2023, while Jacobs was watching the child, he noticed that the child was unresponsive. He contacted Crawford, someone called 911, and the child was transported to a local hospital. Because the child had a brain bleed, however, he was later transported by helicopter to Children's Hospital Colorado in Colorado Springs. Medical staff documented that the child suffered acute and chronic subdural brain bleeds consistent with a shaking-type injury. The staff opined that there was no way the child's injuries could have been caused by falling off the bed, hitting his head on a door frame, or bouncing himself on his rocker. Instead, they believed that the child suffered a "violent shaking event that happened moments before law enforcement arrived" at the scene. The child eventually died from his injuries.

¶ 5 Crawford was charged with (1) child abuse resulting in serious bodily injury; (2) child abuse; and (3) cruelty to animals involving the alleged mistreatment of a puppy she owned with Jacobs. Jacobs was charged as a codefendant in a separate case. Following briefing by the parties, the magistrate dismissed the child abuse resulting in serious bodily injury charge for lack of probable cause.

¶ 6     On July 12, 2023, Stanley invited a television reporter to her office for an interview, portions of which aired that same day with additional coverage in August 2023.  During the portions of the interview that aired in August 2023, Stanley suggested, among other things, that Crawford was not a caring mother because she considered the child a burden to take care of.

¶ 7     Below are Stanley's comments about Crawford and Jacobs:

- "I think [Crawford] saw a live-in babysitter now she can just really pound out the hours.  Right?  [Crawford's] got a live-in babysitter now she doesn't have to worry about anything, right?"

- "I had just had so many buzzers going off when they said [Jacobs] was watching the baby."

- "There is [sic] no witnesses, there is no nothing . . . . There is [sic] a whole lot of things indicative of prior . . . [a] prior incident with that baby."

- "Without the caring factor, without the love factor, then it's, the baby is a pain in the ass."

- "I mean I am going to be very blunt here.  [Jacobs] has zero investment in this child, zero.  He is watching that

baby so he can get laid, that's it. And to have a place to sleep. I'm sorry to be that blunt but honest to God that's what going on."

¶ 8        Crawford contends that Stanley's comments constituted outrageous government conduct. She filed a motion to dismiss the case, arguing that the statements violated the Colorado Rules of Professional Conduct and prejudiced her right to a fair trial.

¶ 9        The district court held two hearings on the motion. After reviewing the evidence and arguments, as well as additional briefing, the district court granted Crawford's motion. It found Stanley's comments "violated [Crawford's] due process right to receive a fair trial before an impartial jury." The district court considered other measures instead of dismissal such as change of venue, vigorous voir dire, and screening questionnaires. But it ultimately determined that any measure less drastic than dismissal would not "adequately maintain the fairness of the proceeding," and "a change of venue would necessarily impact [Crawford's] constitutional right to a trial in the community where she lives and where the conduct is alleged to have occurred."

¶ 10       The prosecution appeals the court's dismissal order.

## II. Standard of Review and Applicable Law

¶ 11    We review a district court's dismissal of a criminal case based on a finding of outrageous government conduct for abuse of discretion. *People v. Burlingame*, 2019 COA 17, ¶ 10. A district court abuses its discretion when its ruling is manifestly arbitrary or unreasonable or when the court misapplies the law. *Id.*

¶ 12    A claim for "outrageous government conduct has always been recognized as a violation of due process." *Id.* at ¶ 11. Thus, "[w]e review de novo to determine whether the state violated a defendant's due process rights." *People v. Eason*, 2022 COA 54, ¶ 40. "But we review whether the district court fashioned an appropriate remedy for an abuse of discretion." *Id.*

¶ 13    "Outrageous governmental conduct is conduct that violates fundamental fairness and is shocking to the universal sense of justice." *People v. Medina*, 51 P.3d 1006, 1011 (Colo. App. 2001), *aff'd sub nom.*, *Mata-Medina v. People*, 71 P.3d 973 (Colo. 2003). A district court reviews the totality of facts in a given case to determine if its prosecution should be barred due to outrageous government conduct. *Id.* We will defer to a district court's findings

5

of fact when the record supports them. *See People v. Jackson*, 2018 COA 79, ¶ 50, *aff'd*, 2020 CO 75.

¶ 14   The Sixth Amendment of the United States Constitution guarantees that a criminal defendant has the right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Colorado's Constitution likewise has a similar provision that defendants have a right to an "impartial jury of the county or district in which the offense is alleged to have been committed." Colo. Const. art. II, § 16.

### III.   Analysis

¶ 15   We agree with the prosecution that the district court improperly dismissed the criminal charges against Crawford.

¶ 16   Regardless of how inappropriate Stanley's public comments were, there are only two situations in which outrageous government conduct justifies the sanction of dismissal, and Crawford's situation does not fall under either.

¶ 17   The first occurs when the government creates or manufactures the crime for which the defendant is charged in a way that compromises the integrity of the judicial system. The only case in Colorado involving this situation is *People v. Auld*, 815 P.2d 956,

957 (Colo. App. 1991). In *Auld*, government agents conducted an undercover operation that targeted a private attorney. *Id.* As part of the undercover operation, the government agents "perpetrated a fraud upon a court of this state by filing false documents, making false statements to a judge, and creating a counterfeit prosecution." *Id.* at 958. The district court in *Auld* was unaware of the fictitious nature of the proceedings. Because of the agent's actions, a division of this court "determined that the conduct of the executive branch, in compromising the judicial branch, thereby making it an unknowing accomplice to undercover prosecution activities, was so outrageous that [dismissal was] required." *Id.* at 959.

¶ 18    The second situation involves instances when the government intrudes upon the attorney-client relationship. "[T]o show outrageous governmental conduct in this context, a defendant must show (1) the government's objective awareness of an ongoing, personal attorney-client relationship between the third party and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice." *People v. Walker*, 2022 COA 15, ¶ 17.

¶ 19 In fact, "[i]nstances where trial courts have found outrageous government conduct in Colorado are vanishingly rare, and the threshold for such a finding appears to be exceedingly high." *Burlingame*, ¶ 12. Generally, when this defense has been raised, courts have found that less severe remedies than dismissal can ameliorate any alleged or actual prejudice to the defendant or due process concerns. *See id.* at ¶¶ 3, 19 (reversing a district court's ruling that two prosecutors, an investigator from the prosecution's office, and a police officer engaged in outrageous government conduct for interviewing the defendant but remanding the case to the district court to consider whether the defendant's statement should be suppressed due to the psychological coercion); *Medina*, 51 P.3d at 1012 (concluding that, while the police officers had acted inappropriately by failing to advise defendant of his rights and engaging in coercive conduct, such actions did not give rise to outrageous government conduct, but "the proper remedy was suppression of [the] defendant's statements to the police").

¶ 20 Nonetheless, Crawford argues that outrageous government conduct "is a deliberately wide net, designed to protect due process rights in extreme situations" and that "[n]arrowing the scope of

8

such claims would remove a broad and necessary protection when, as here, government conduct does not fall into a previously litigated category of claim." In other words, Crawford seeks to expand the doctrine to her situation.

¶ 21 We decline to do so, in part, because Crawford has not cited, nor are we aware of, any authority in this state or in other jurisdictions in which the defense has been expanded to circumstances other than the two identified.

¶ 22 Indeed, our survey of case law outside of Colorado supports that the defense is limited. *See United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994) ("To succeed on an outrageous conduct defense, the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime."); *State v. Corcoran*, 2023-Ohio-1218, ¶ 49 (8th Dist.) ("There are two factors that must be demonstrated to establish the outrageous government conduct defense: (1) government creation of the crime and (2) substantial coercion."); *People v. Joly*, 970 N.W.2d 426, 434-36 (Mich. Ct. App. 2021) (concluding that the government's conduct was outrageous because the government intruded upon the attorney-client

relationship); *People v. Guillen*, 174 Cal. Rptr. 3d 703, 764 (Ct. App. 2014) ("Those cases where California courts have concluded dismissal is required for outrageous government conduct all involve situations where the government violated a fundamental right of the defendants, the attorney-client relationship, and prevented them from receiving a fair trial."); *State v. Laurence*, 848 A.2d 238, 250 (R.I. 2004) (same); *People v. Ming*, 738 N.E.2d 628, 634 (Ill. App. Ct. 2000) ("A defendant can raise the defense of outrageous conduct if the government was overly involved in the creation of a crime . . . ."); *State v. Houston*, 475 S.E.2d 307, 322 (W. Va. 1996) (same).

¶ 23     We also decline to expand the defense because a court may employ other remedies to protect a defendant's right to a fair trial even when a defendant alleges that the government has acted inappropriately by making extrajudicial statements.  Among other things, the defendant could seek a change of venue on grounds that (1) the pretrial publicity was "so massive, pervasive, and prejudicial as to create a presumption of public bias," *People v. Hankins*, 2014 COA 71, ¶12; or (2) the defendant suffered actual prejudice by proving "a nexus between pretrial publicity and a panel of partial

10

jurors," *id.* at ¶ 18. Generally, pretrial publicity may be mitigated and a constitutionally impartial jury can be impaneled when the venire is questioned individually or through a combination of screening questionnaires, questioning by counsel, or individual questioning by the court. *Id.*

¶ 24 The district court acknowledged that there were types of remedies available for pretrial publicity that "would normally be based upon evidence presented at public hearings and information contained in an arrest warrant affidavit that was made public or accessible by the public." In the court's view, it would be inappropriate to treat Stanley's "conclusory statements" characterizing Crawford as uncaring, insinuating the child's death was unavoidable, and referring to Crawford's prior criminal histories as "normal pretrial publicity." But whether Stanley engaged in conduct sufficient for Crawford to establish a cognizable outrageous government conduct claim warranting the sanction of dismissal is distinct from whether Stanley's conduct warranted discipline separate from the criminal matter.

¶ 25 Indeed, Stanley was separately prosecuted in an attorney disciplinary matter based, in part, on the district court's finding

11

that her actions constituted outrageous government conduct. *People v. Stanley*, 559 P.3d 697, 749-52 (Colo. O.P.D.J. 2024). We acknowledge that the Colorado Supreme Court Office of the Presiding Disciplinary Judge (OPDJ) found Stanley's conduct outrageous, and we do not question that conclusion here. But the OPDJ's finding does not dictate the remedies available to the district court in this criminal case, and we have concluded that dismissal was not an available option because Stanley's statements — while inappropriate — did not assist with manufacturing the conduct underlying the charged offenses, nor did her statements attempt to invade an attorney-client relationship. *See also In re Stanley*, 2025 CO 51, ¶¶ 109-113 (affirming the disciplinary board's recommended sanction of disbarment of Stanley's license to practice law).

¶ 26    Thus, we conclude the district court erred by dismissing the charges against Crawford.

## IV.    Conclusion

¶ 27    The order is reversed, and the case is remanded to the district court to reinstate the criminal complaint.

JUDGE FOX and JUDGE GROVE concur.

12