24CA1052 Peo v Jacobs 05-21-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1052
Fremont County District Court No. 23CR191
Honorable Kaitlin B. Turner, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

William Jacobs,

Defendant-Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

---

Jeffrey D. Lindsey, District Attorney, Wendy S. Owens, Deputy District
Attorney, Cañon City, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Julia Chamberlin, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1     The District Attorney for the Eleventh Judicial District appeals the district court's order dismissing the criminal charges brought against defendant, William Jacobs, based on outrageous government conduct by the elected district attorney.  We reverse the order of dismissal and remand the case to the district court for reinstatement of the criminal complaint.

## I.     Background

¶ 2     Jacobs was charged with first degree murder, child abuse resulting in death, and child abuse resulting in serious bodily injury following the death of his girlfriend's ten-month-old child.  The child allegedly sustained the fatal injuries while in Jacobs's care.

¶ 3     In July 2023, a year before the scheduled trial, the then-elected Eleventh Judicial District Attorney, Linda Stanley, invited a television reporter to her office for an interview.  Among other things, Stanley opined on Jacobs's guilt, disclosed his juvenile criminal history, and made lewd remarks about Jacobs's relationship with his girlfriend and her child.  Stanley's statements were featured in two televised news stories, which aired in July and August 2023, and were rebroadcast on multiple social media sites.

¶ 4     Based on Stanley's comments, Jacobs filed a motion to dismiss the case for outrageous government conduct.  He argued that Stanley had knowingly violated attorney ethical standards, including the American Bar Association (ABA) Criminal Justice Standards, and compromised his right to due process and a fair trial.  Specifically, he asserted that Stanley's interview statements "heighten[ed] public condemnation of [him], prejudic[ed] a potential jury, influenc[ed] the outcome of the case, and undermin[ed] public confidence in the criminal legal system."  He asked the court to dismiss all charges.

¶ 5     The district court held two hearings on the motion.  After reviewing the evidence and arguments, as well as additional briefing, the district court granted Jacobs's motion.  The court concluded that Stanley's conduct, which violated her ethical duties under the Colorado Rules of Professional Conduct and other standards, had a "substantial likelihood of materially prejudicing [the] proceedings" and amounted to outrageous government conduct.  As for the remedy, the court declined the prosecution's request for a change of venue because, in its view, a change of venue over the defendant's objection would violate his right to a

2

trial by a jury of his peers in the county where the crime was allegedly committed.  Accordingly, the district court dismissed the charges against Jacobs.

## II.     Discussion

¶ 6     The prosecution appeals the district court's order, arguing that it erred by concluding that Stanley's conduct satisfies the standard for finding outrageous government conduct that warrants dismissal. We agree.

### A.     Standard of Review

¶ 7     Outrageous government conduct is a due process claim that, when established, justifies the exercise of a court's supervisory power to dismiss a case.  *People v. Johnson*, 987 P.2d 855, 859 (Colo. App. 1998).  To successfully assert the defense, a defendant must show that government officials' actions violated the defendant's due process rights "to such a degree as to violate fundamental fairness and shock the universal sense of justice." *People v. McDowell*, 219 P.3d 332, 336 (Colo. App. 2009).

¶ 8     When the defense is raised, a district court must review the totality of the facts of the case.  *People in Interest of M.N.*, 761 P.2d 1124, 1129 (Colo. 1998).  We have traditionally reviewed the court's

decision for an abuse of discretion. *People v. Medina*, 51 P.3d 1006, 1011 (Colo. App. 2001), *aff'd sub nom.*, *Mata-Medina v. People*, 71 P.3d 973 (Colo. 2003). A court abuses its discretion when its ruling is manifestly arbitrary or unreasonable or when the court misapplies the law. *People v. Burlingame*, 2019 COA 17, ¶ 10.

¶ 9     However, "outrageous government conduct has always been recognized as a violation of due process," and we review due process claims de novo. *Id.* at ¶ 11; *see also id.* at ¶¶ 23-24, 34 (Tow, J., concurring) (acknowledging that divisions of this court have reviewed decisions concerning outrageous government conduct for an abuse of discretion but advocating for de novo review of the ultimate conclusion because the claim is based on a constitutional violation). We need not resolve this seeming conflict because we conclude that the trial court abused its discretion. *See id.* at ¶ 11.

        B.     The Court Erred by Dismissing the Complaint

¶ 10     The Supreme Court has recognized the possibility that under certain circumstances, the conduct of government agents may be so outrageous as to violate a defendant's right to due process. *United States v. Russell*, 411 U.S. 423, 431-32 (1973). Under those circumstances, "due process principles . . . absolutely bar the

government from invoking judicial processes to obtain a conviction" and the case must be dismissed. *Id.* The defendant effectively receives immunity from prosecution because the government's conduct in bringing the case so offends due process principles that it cannot avail itself of the judicial system. *See United States v. Montoya,* 45 F.3d 1286, 1300 (9th Cir. 1995) ("Outrageous government conduct is . . . a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed.").

¶ 11     Dismissal for outrageous government conduct typically requires a finding that the government was excessively entangled in the creation or commission of the crime, including by inducing or coercing the defendant into committing the crime. *See, e.g., People v. Auld,* 815 P.2d 956, 958 (Colo. App. 1991) (prosecutor and undercover agent conspired to file fake charges in a scheme intended to induce the defendant lawyer into committing a crime); *United States v. Robinson,* 993 F.3d 839, 850 (10th Cir. 2021) (To show outrageous government conduct, "the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime."

(citation omitted)); *State v. Hicks*, 2023-Ohio-4126, ¶ 20 (Outrageous government conduct occurs "where law enforcement agents employ[] unwarranted physical or mental coercion, where government agents engineer and direct the criminal enterprise from start to finish, and where the government essentially manufactures new crimes in order to obtain the defendant's conviction.").

¶ 12 Instances in which courts have found outrageous government conduct are rare. *See United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993) ("The banner of outrageous misconduct is often raised but seldom saluted. . . . [C]ourts have rejected its application with almost monotonous regularity."). As a division of this court recently recognized, *Auld* is the only Colorado appellate case in which the government's conduct was found to be outrageous, and "the threshold for such a finding appears to be exceedingly high." *Burlingame*, ¶ 12.

¶ 13 In *Auld*, the district attorney "perpetrated a fraud upon [the district] court" by filing a fictitious criminal complaint against a fictitious person, thereby "duping" the court into participating in an undercover operation against the defendant. *Auld*, 815 P.2d at 957, 958-59. The division concluded that making the court complicit in

such deceit "must be condemned" and affirmed the district court's dismissal of the complaint. *Id.* at 959. Every other claim of outrageous government conduct raised on appeal in Colorado has been rejected, either because the conduct at issue was not sufficiently outrageous or because it did not involve government entanglement in the creation or commission of the crime. *See, e.g., Burlingame,* ¶¶ 4, 18-19 (reversing dismissal of complaint because, although the government conduct might constitute legal error, it did not satisfy the standard for outrageous government conduct); *Medina,* 51 P.3d at 1011-12 (affirming denial of motion to dismiss because, although the government conduct in interrogating the defendant violated his constitutional rights, it did not implicate the integrity of the court and the violations could be remedied by suppressing the defendant's statements); *M.N.,* 761 P.2d at 1125-26, 1128-30 (reversing dismissal of delinquency petitions because officer's conduct in giving juvenile drugs and encouraging him to commit crimes did not exceed the permissible outer limits of governmental involvement in the criminal conduct; collecting cases). At bottom, this narrow defense "is manifestly reserved for

7

only 'the most intolerable government conduct.'" *United States v. Warren*, 747 F.2d 1339, 1341 (10th Cir. 1984) (citation omitted).

¶ 14 We do not condone Stanley's actions in this case. And while her conduct might be considered "outrageous" in the ordinary sense, we conclude that it does not satisfy the stringent standard for finding outrageous government conduct as set forth in the case law.

¶ 15 In this case, the government was not involved at all in the creation or commission of the underlying crime. *See People v. Perez*, 2019 COA 48, ¶ 35 (rejecting defendant's outrageous government conduct claim because the crime was complete when the police arrived on scene and they did not "encourage[] or participate[]" in the commission of the crimes for which the defendant was prosecuted), *aff'd in part and vacated in part on other grounds*, 2021 CO 5M. Before any of the conduct at issue, Jacobs allegedly fatally injured a child and was arrested, charged, and arraigned for the crime. In other words, Stanley's commentary on the case did not play any part in the filing of charges against Jacobs. Under these circumstances, "the power to dismiss charges based solely on government misconduct must be used sparingly."

8

*United States v. Guzman*, 282 F.3d 56, 59 (1st Cir. 2002). In addition, Stanley's conduct never intruded into an attorney-client relationship. *See People v. Walker*, 2022 COA 15, ¶ 17 (recognizing a possible outrageous governmental conduct claim when the government deliberately intrudes into an attorney-client relationship).

¶ 16    Therefore, regardless of how improper Stanley's public comments were, they did not constitute the kind of outrageous conduct that justifies the sanction of dismissal. *Cf. United States v. Walters*, 910 F.3d 11, 23, 28 (2d Cir. 2018) (rejecting an outrageous government conduct claim because, although law enforcement's conduct in leaking confidential grand jury information to the press was "highly improper," "serious misconduct," and "likely criminal," the conduct did not substantially influence, or undermine the fairness of the process resulting in, the grand jury's indictment).

¶ 17    Nor are we persuaded that a violation of the Colorado Rules of Professional Conduct is sufficient to support dismissal of a case for outrageous government conduct. Citing *People v. Antunes*, 680 P.2d 1321, 1323 (Colo. App. 1984), the district court concluded that the Colorado Rules of Professional Conduct and the ABA Criminal

Justice Standards could serve as a framework for determining whether the government's conduct was outrageous. However, neither *Antunes,* nor any other case we could find, supports this proposition. *Antunes* was not an outrageous government conduct case; the question was whether prosecutorial misconduct had impaired the defense investigation. *Id.* The division determined that the prosecutor had committed *no violation* of the professional rules and, therefore, there was no prosecutorial misconduct that would warrant dismissal of the case. *Id.*

¶ 18 While a violation of the professional rules may be a factor in evaluating whether prosecutorial misconduct occurred, *see, e.g.,* *Domingo-Gomez v. People,* 125 P.3d 1043, 1048-49 (Colo. 2005); *Harris v. People,* 888 P.2d 259, 264-65 (Colo. 1995), it is less clear whether the rules bear on the due process analysis. True, in *Auld,* the division noted that the district attorney's conduct in creating a "counterfeit prosecution" and committing perjury might have violated ethical rules and prosecutorial standards. 815 P.2d at 958-59. But the ethical violations themselves were not the basis of the outrageous government conduct finding; the finding was based on the government's conduct in fabricating a case that fraudulently

"implicated the court in the prosecution aspect of the law enforcement process." *Id.* at 958.

¶ 19    Thus, whether Stanley engaged in conduct sufficient for Jacobs to establish a cognizable outrageous government conduct claim warranting the sanction of dismissal is distinct from whether Stanley's conduct violated ethical rules warranting disciplinary sanctions. *See Burlingame,* ¶ 18 (acknowledging that "while the government's behavior might be considered poor judgment or even legal error, the conduct did not rise to the level of outrageous governmental conduct"). Violations of the professional rules should result in an appropriate professional sanction, as they have in this case. *See People v. Stanley,* 559 P.3d 697, 706 (Colo. O.P.D.J. 2024) (disbarring Stanley for her extrajudicial statements in this case and two others), *aff'd in part and rev'd in part, In re Stanley,* 2025 CO 51 (affirming the disciplinary board's recommended sanction of disbarment). But they are not dispositive of whether the government's conduct was outrageous. *See* Colo. RCP, Scope, ¶ 20 ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.").

¶ 20    The court's main concern was that Stanley's statements would prejudice the public against Jacobs, infringing on his right to an impartial jury. But even a constitutional violation rarely warrants dismissal for outrageous government conduct. *See Medina*, 51 P.3d at 1012 (egregious violations of a defendant's Fifth Amendment rights did not constitute outrageous conduct); *People v. Cowart*, 244 P.3d 1199, 1206 (Colo. 2010) (concluding that even though the defendant's Fifth and Sixth Amendment rights were violated, "there was no outrageous government conduct"). And we have not found, nor does Jacobs cite, any authority supporting the proposition that a dismissal for outrageous government conduct is the proper remedy when prosecutorial misconduct impinges on a defendant's right to an impartial jury. Rather, as discussed above, the outrageous government conduct defense protects defendants from enduring criminal proceedings that would not have been initiated but for the government's involvement in the underlying crime. *See Perez*, ¶ 35.

¶ 21    In reaching our disposition, we expressly acknowledge the district court's concern that Jacobs's constitutional rights may have been impacted by Stanley's statements. Specifically, we share the

court's concern that Stanley's statements disclosed possibly inadmissible information and may have heightened public condemnation of Jacobs, which could potentially affect the court's ability to impanel an impartial jury. And as the district court pointed out, changing the venue to remedy the government's improper conduct — over Jacobs's objection — may not serve the interests of justice.

¶ 22    But as legitimate as these concerns are, they must be addressed at the appropriate time in the proceedings. Mechanisms exist to mitigate or remedy the court's concerns going forward. *See People v. Botham*, 629 P.2d 589, 596 (Colo. 1981) (listing six means by which a court may ensure a defendant's constitutional right to a fair trial by a panel of impartial jurors in the face of pretrial publicity), *superseded by rule on other grounds as recognized in People v. Garner*, 806 P.2d 366 (Colo. 1991). And if those mechanisms cannot adequately protect Jacobs's right to a fair trial, the court may consider other options at that time. Thus, should it be the case that Stanley's conduct has imperiled Jacobs's constitutional or procedural rights, the court has remedies at its disposal on remand.

### III.   Disposition

¶ 23   The order is reversed, the charges against Jacobs are reinstated, and the case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE FOX and JUDGE SCHUTZ concur.